UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERE R. JACKSON,

         Plaintiff,

 v.

WESTCHESTER COUNTY; ARAMARK
CORRECTIONAL SERVICES; ARAMARK
DIRECTOR DONNA BLACKMAN; *and*
ASSISTANT WARDEN FRANCIS
DELGROSSO,

         Defendants.

No. 18-CV-7207 (KMK)

OPINION & ORDER

Appearances

Amere R. Jackson
Yonkers, NY
*Pro Se Plaintiff*

Mony Bp Yin, Esq.
Bennett, Bricklin & Saltzburg, LLC
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

 Pro se Plaintiff Amere R. Jackson ("Plaintiff"), currently an inmate at the Westchester County Jail, brings this Action, pursuant to 42 U.S.C. § 1983, against Aramark Correctional Services ("Aramark"), Aramark Director Donna Blackman ("Blackman") (collectively, "Moving Defendants"), Westchester County, and Assistant Warden Francis Delgrasso ("Delgrasso") (collectively, "Defendants"), alleging violation of his constitutional rights due to substandard food and unhygienic food preparation facilities. (*See* Compl. (Dkt. No. 2).) Before the Court is Moving Defendants' Motion To Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6).[1]  (Not. of Mot. (Dkt. No. 15).)  For the following reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and Plaintiff's Affirmation in Opposition to Moving Defendants' Motion, (*see* Compl.; Affirmation of Amere R. Jackson ("Jackson Aff.") (Dkt. No. 17)), and are accepted as true for purposes of resolving the instant Motion.

Plaintiff alleges that since his arrival at the Westchester County Jail on May 29, 2018, he has received substandard and unhygienic food.  (Compl. 4.)[2]  Plaintiff states that he is allergic to strawberries and was placed on a "diet tray" on June 1, 2018.  (*Id.* at 7.)  Plaintiff does not define a "diet tray," but states that his meals consist of mostly rice and some kind of meat.  (*Id.*)  Plaintiff alleges that the meat always arrives undercooked, pink, and bloody, and the rice is hard and watery.  (*Id.*)  Plaintiff asserts that if his meal does not consist of rice and meat, it consists of beans and corn that are always undercooked.  (*Id.*)  Plaintiff further alleges that between or around June 4, 2018 and June 6, 2018, he found dead flies in his food and plastic in his rice that had peeled off the meal trays.  (*Id.* at 4.)  On June 8, 2018 and June 9, 2018, Plaintiff allegedly

---

[1] Defendants Westchester County and Delgrasso were served but have not timely filed their answers or otherwise responded, and have never appeared in this case.  (Dkt. Nos. 10–11.)  Plaintiff may consider seeking default judgment against Defendants who have not responded.  *See Thompson v. Booth*, No. 16-CV-3477, 2018 WL 4760663, at *12 (S.D.N.Y. Sept. 28, 2018) (stating that court could enter default judgment against defendants who had been served but had failed to appear); *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 332 (S.D.N.Y. Sept. 9, 2014) (instructing plaintiff to consider seeking a default judgment against defendant who had been served but failed to appear).

[2] Plaintiff's filings do not have consistent pagination.  To avoid confusion, the Court cites to the ECF-generated page numbers at the top right corner of the relevant page.

found beetles in his salad. (*Id.*) On June 11, 2018, June 12, 2018, June 13, 2018, and June 14, 2018, Plaintiff's food allegedly arrived undercooked, bloody, and pink on the inside. (*Id.*) Plaintiff further alleges that generally his bread arrives stale and moldy and his salad brown and soggy, that he has found bugs and plastic from his meal tray in his food on several occasions, and that the meal trays have a foul-smelling odor. (*Id.*; Jackson Aff. 1.) When Plaintiff refused his moldy bread and bloody chicken, he did not receive a replacement. (Compl. 5.) Plaintiff further alleges that the food workers do not wear gloves, hairnets, or other safety garments, and that he has found hair in his food. (Compl. 5; Jackson Aff. 1.)

Plaintiff asserts that he has filed several grievances with jail personnel, and was instructed by them all to take the issue up with Aramark. (Compl. 4–7.) For example, after finding beetles in his food on June 8, 2018 and June 9, 2018, Plaintiff filed a grievance on June 9, 2018 with Sergeant Azim ("Azim"), who is not a party to this Action. Azim refused to accept the grievance and instructed Plaintiff to file it with Aramark. (*Id*. at 4.) On June 14, 2018, Plaintiff filed another grievance regarding the food problem with Sergeant Hogue ("Hogue"), who is not a party to this Action, who said he could not take the grievance, refused to take it, and instructed Plaintiff to file it with Aramark. (*Id*.) On June 15, 2018, Plaintiff mailed the grievance to Aramark, but has not received a response. (*Id.* at 4, 7.) Despite his complaints, Plaintiff maintains that the conditions have not improved. (*Id.* at 4–7.)

Plaintiff alleges that all Defendants are aware of the substandard food conditions through depositions, previous lawsuits, grievances, and through daily meetings where these grievances and complaints are discussed, but have failed to correct the issue. (*Id.* at 5–6.) Plaintiff alleges that several other inmates have filed lawsuits for the same or similar food conditions at issue in this Action. (*Id.*) Defendants have allegedly personally observed kitchen workers not wearing

3

gloves or hairnets and failed to take corrective action. Defendants have allegedly failed to remove the molded and peeling meal trays from service. (*Id.*)

As a result of these actions, Plaintiff asserts that he experienced vomiting, explosive diarrhea, nausea, fatigue, debilitating headaches, weight loss, hunger pangs, and dehydration. (*Id.* at 7.)

B.  Procedural Background

Plaintiff filed his Complaint on August 9, 2018. (Compl.) On August 20, 2018, the Court granted Plaintiff's request to proceed in forma pauperis. (Dkt. No. 4.) On October 1, 2018, the Court issued an Order directing service on Defendants. (Dkt. No. 6.)

On January 4, 2019, Moving Defendants submitted a pre-motion letter to the Court requesting permission to file a Motion to Dismiss. (*See* Letter from Mony B.P. Yin, Esq., to Court (Dkt. No. 13).) On January 14, 2019, the Court granted Moving Defendants' request and set a briefing schedule. (Dkt. No. 14.)

On February 14, 2019, Moving Defendants filed their Motion To Dismiss and accompanying papers. (Not. of Mot.; Moving Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Moving Defs.' Mem.") (Dkt. No. 16).) Plaintiff responded on March 1, 2019. (*See* Jackson Aff.) Moving Defendants replied on March 29, 2019. (Moving Defs.' Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 18).)

II. Discussion

Moving Defendants argue, among other things, that Plaintiff's claims against Aramark and Blackman in her official capacity fail because Plaintiff has not established *Monell* liability, and that Plaintiff's claims against Blackman fail because Plaintiff has failed to allege her personal involvement. (Moving Defs.' Mem. 3.)

4

A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se

6

litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [the plaintiff] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

B. Analysis

1. *Monell* Liability

Moving Defendants argue that Plaintiff has failed to state a *Monell* claim. (Moving Defs.' Mem. 8–11.)[3] "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior" (citation and italics omitted)). That is, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270

---

[3] Aramark Defendants state that for purposes of this Motion only, Aramark concedes to being deemed a state actor, so that the principles articulated in *Monell*, which addresses municipal liability, may be applied to Aramark. (Moving Defs.' Mem. 9 n.1.) The Court notes that in any event, "[i]n determining whether or not a private employer may be held liable in a § 1983 claim, courts are guided by the principles articulated in *Monell* . . . and its progeny." *Torres v. Aramark Food*, No. 14-CV-7498, 2015 WL 9077472, at *10 (S.D.N.Y. Dec. 16, 2015) (citations omitted); *see also Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) ("Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses."); *Gitter v. Target Corp.*, No. 14-CV-4460, 2015 WL 5710454, at *3 n.4 (S.D.N.Y. Sept. 29, 2015) ("The Second Circuit has extended *Monell's* rationale to private businesses." (citations omitted)). The Court may therefore apply the *Monell* analysis to Aramark.

7

(S.D.N.Y. 2008). Therefore, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–691). The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citation omitted). A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Here, Plaintiff does not allege the existence of any policy, any actions taken or decisions made by any Aramark policymaking officials, any systemic failures to train or supervise, or any practices so widespread that they practically have the force of law. (*See* Compl.) Plaintiff summarily alleges that all Defendants were aware of substandard food and unhygienic food preparation facilities through depositions, previous lawsuits, grievances, and daily meetings where these grievances were discussed. (Compl. 5–6.) Plaintiff does not, however, provide any factual details regarding these other lawsuits and grievances. These lacking details doom Plaintiff's Complaint. *See Mercedes v. Westchester Cnty.*, No. 18-CV-4087, 2019 WL 1429566, at \*4–5 (S.D.N.Y. Mar. 29, 2019) (dismissing *Monell* claim against Aramark and county alleging plaintiff was served unhygienic and inedible food where plaintiff did not allege the existence of

any policy, any actions taken or decisions made by policymaking officials, any systemic failures to train or supervise, or any "factual indicia from which this Court could infer the existence of a policy or custom"); *Hoffstead v. Aramark Corr. Servs., LLC*, No. 18-CV-2381, 2019 WL 1331634 (S.D.N.Y. Mar. 25, 2019) (same); *see also McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation); *Ackridge v. Aramark Corr. Food* Servs., No. 16-CV-6301, 2018 WL 1626175, at *13 (S.D.N.Y. Mar. 30, 2018) (dismissing *Monell* claim against county alleging plaintiff was not served kosher food because plaintiff failed to allege any specific facts about a custom or policy aside from the facts of his own case); *Gordon v. City of New York*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation [was] unsupported by anything other than the facts of what occurred in his particular case" (citation omitted)). Accordingly, Plaintiff's claims against Aramark must be dismissed, as must any claims against Blackman in her official capacity. *See McKenzie*, 2018 WL 6831157, at *7 (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation); *Voltaire v. Westchester Cnty. Dep't of Soc. Servs.*, No. 11-CV-8876, 2016 WL 4540837, at *7 (S.D.N.Y. Aug. 29, 2016) (dismissing plaintiff's claims against municipal employees in their official capacities where the complaint "provided no facts that would allow [the court] to plausibly infer that [the defendants] acted pursuant to a municipal custom or practice").

2. Personal Involvement

Moving Defendants argue that all claims against Blackman in her individual capacity must be dismissed because Plaintiff fails to plead that Blackman was personally involved in the alleged constitutional violations. (Moving Defs.' Mem. 11.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133,138 (2d Cir. 2013) (citation omitted). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citation, italics, and quotation marks omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Blackman's actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff names Blackman generally among the Defendants who were aware of the substandard food and unhygienic conditions and who failed to remedy the situation. (Compl. 5–7.) Although Plaintiff states that Blackman was aware of the food quality issues and ignored them, "Plaintiff does not provide facts alleging *what* [Blackman] knew about the [poor] food

10

problem or *when* [she] knew about it." *Quick v. Westchester Cnty.,* No. 18-CV-243, 2019 WL 1083784, at *5 (S.D.N.Y. Mar. 7, 2019) (dismissing claims against individual defendants where plaintiff failed to allege specific facts that showed that the defendants "were responsible for a policy or custom on food preparation, training, or supervision; were grossly negligent in supervising employees responsible for food preparation, or were deliberately indifferent to a food preparation problem"); *Constant v. Annucci,* No. 16-CV-3985, 2018 WL 1684411, at *4 (S.D.N.Y. Apr. 5, 2018) (holding personal involvement not established where the "allegation merely states, in conclusory terms, that [the supervisory defendants] subjected [the plaintiff] to the conditions complained of"); *Bridgewater v. Taylor*, 832 F. Supp. 2d 337, 348 (S.D.N.Y. 2011) (holding personal involvement not established where the plaintiff made conclusory claims that a supervisory official failed to provide proper training and supervision or created a policy). Moreover, Plaintiff does not allege that Blackman participated directly in the preparation or distribution of food at all (let alone in the preparation or distribution of the particular food at issue), established a policy or custom that allowed for rotten food to be provided to inmates, failed to follow a policy or custom on food preparation, or was otherwise grossly negligent in allowing others to prepare food without following proper procedures. *See Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018) (holding that personal involvement was not established where the plaintiff failed to allege the defendants were "present" for the alleged violation or "participated directly" in or "somehow permitted" the alleged violation (citing *Grullon*, 720 F.3d at 139)); *Lara-Grimaldi v. Cnty of Putnam*, No. 17-CV-622, 2018 WL 1626348, at *11 (S.D.N.Y. Mar. 29, 2018) (holding personal involvement not established where the "[c]omplaint contain[ed] no allegations whatsoever that [the defendant] was involved in, aware of, or somehow permitted" the violation); *McClenic v. Shmettan*, No. 15-CV-705, 2015

11

WL 1930088, at *2–5 (E.D.N.Y. Apr. 28, 2015) (dismissing § 1983 claim where the plaintiff failed to allege the personal involvement of any individual defendant); *George v. City of N.Y.*, No. 12-CV-6365, 2013 WL 5943206, at *6 (S.D.N.Y. Nov. 6, 2013) (holding that "the failure to allege that an individual was personally and directly involved is a fatal defect on the face of the complaint" (citing *Iqbal*, 556 U.S. at 670)).

That Blackman is the Aramark Director does not change the analysis, because a defendant "cannot be held liable for the service of rotten [food] based on a respondeat superior theory." *Quick,* 2019 WL 1083784, at *4 (citations omitted); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2014) ("Where a defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through the 'chain of command' (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct." (citations omitted)). There are, in sum, no alleged facts showing that Blackman was personally involved in the alleged unconstitutional deprivation at issue. *See Falls*, 2018 WL 3768036, at *6 (holding that personal involvement was not established where the plaintiff failed to allege the defendants were "present" for the alleged violation or "participated directly" in or "somehow permitted" the alleged violation); *Webster v. Fischer*, 694 F. Supp. 2d 163, 179 (N.D.N.Y. 2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability.").

Accordingly, all claims against Blackman in her individual capacity are dismissed.[4]

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted.[5] Because this is the first adjudication of Plaintiff's claims, the dismissal is without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, all prior complaints and filings. The amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

---

[4] Because dismissal is required on the grounds of Plaintiff's failure to show Blackman's personal involvement in the alleged constitutional deprivation and failure to state a *Monell* claim, the Court need not resolve at this time Defendants' arguments that Plaintiff fails to allege sufficient facts to a state a claims under the Eighth Amendment, (Moving Defs.' Mem. 13–16), or that Plaintiff's alleged injuries are not recoverable under the PLRA, (*id*. 7–8, 10–11). In correcting the deficiencies identified in this Opinion, Plaintiff will have the opportunity to further develop his claims.

[5] The Court notes that allegations nearly identical to Plaintiff's very concerning claims regarding poor food sanitation and quality have recently been raised in numerous other actions against Westchester County and Aramark in this District. *See, e.g.*, *Crispin v. Westchester Cty.*, No. 18-CV-7561, 2019 WL 2419661 (S.D.N.Y. June 10, 2019); *Hoffstead*, 2019 WL 1331634; *Hanner v. Westchester Cnty*, No. 16-CV-7610, 2019 WL 1299462 (S.D.N.Y. Mar. 21, 2019); *Quick*, 2019 WL 1083784; *Mercedes*, 2019 WL 1429566; *White v. Westchester Cnty.*, No. 18-CV-990, 2018 WL 6493113 (S.D.N.Y. Dec. 10, 2018); *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175 (S.D.N.Y. Mar. 30, 2018). The Court expects that Counsel for Defendants also takes note and will discuss the serious allegations raised in these cases with her clients.

The Clerk of the Court is respectfully requested to terminate the pending Motion, (Dkt. No. 15), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED:   July 25, 2019
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE